UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CHRISTINE DAVIS,

                Plaintiff,

      - against -

AMERICAN BROADCASTING COMPANY,
DELICIOUS NON-SEQUITUR
PRODUCTIONS, LLC, BLUE PARK
PRODUCTIONS, SHAVON SULLIVAN
WRIGHT, CHERISSE PARKS, JUSTIN
HALPERN, PATRICK SCHUMACKER, and
QUINTA BRUNSON,

                Defendants.

1:22-cv-05944-KPF

---

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS
AMERICAN BROADCASTING COMPANIES, INC., DELICIOUS NON-SEQUITUR,
JUSTIN HALPERN, PATRICK SCHUMACKER, AND QUINTA BRUNSON'S MOTION
TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Rachel F. Strom
Celyra I. Myers
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
Telephone: (212) 402-4069
Facsimile: (212) 379-5244
Rachelstrom@dwt.com
Celyramyers@dwt.com

*Attorneys for Defendants American Broadcasting
Companies, Inc., Delicious Non-Sequitur, Justin
Halpern, Patrick Schumacker, and Quinta Brunson*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT ..................................................................................................................... 2

THE TWO WORKS ARE NOT SUBSTANTIALLY SIMILAR .................................................. 2

    A.    The More Discerning Observer Test Unquestionably Applies ................................. 2

    B.    The Protectible Expression is Not Similar ............................................................. 4

CONCLUSION ................................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A&E Television Networks, LLC v. Big Fish Entm't, LLC*,
   22 Civ. 7411 (KPF), 2023 WL 4053871 (S.D.N.Y. June 16, 2023)......................................3, 4

*Abdin v. CBS Broad., Inc.*,
   971 F.3d 57 (2d Cir. 2020)...................................................................................................7

*Alexander v. Murdoch*,
   No. 10-cv5613 (PAC), 2011 WL 2802923 (S.D.N.Y. July 14, 2011)
   *aff'd*, 502 F. App'x 107 (2d Cir. 2012)...................................................................................7

*Allen v. Scholastic, Inc.*,
   739 F. Supp. 2d 642 (S.D.N.Y. 2011)....................................................................................1

*Cabell v. Sony Pictures Entm't, Inc.*,
   714 F. Supp. 2d 452, 454 (S.D.N.Y. 2010)
   *aff'd*, 425 F. App'x 42 (2d Cir. 2011)....................................................................................7

*DiTocco v. Riordan*,
   496 F. App'x 126 (2d Cir. 2012) ..........................................................................................8

*Dreamtitle Publishing, LLC v. Penguin Random House LLC*,
   No. 1:22-cv-7500-GHW, 2023 WL 4350734 (S.D.N.Y. July 5, 2023)......................5, 6, 8, 9

*Hamil America, Inc. v. GFI*,
   193 F.3d 92 (2d Cir. 1999)...................................................................................................3

*Hogan v. DC Comics*,
   48 F. Supp. 2d 298 (S.D.N.Y. 1999).....................................................................................8

*Knitwaves, Inc. v. Lollytogs, Ltd.*,
   71 F.3d 996 (2d Cir. 1995)...................................................................................................3

*Mena v. Fox Entertainment Group, Inc.*,
   No. 11 Civ. 5501 BSJ RLE, 2012 WL 4741389 (S.D.N.Y. Sept. 29, 2012) .....................9, 10

*Nichols v. Universal Pictures Corp.*,
   45 F.2d 119 (2d Cir. 1930)...................................................................................................7

*Robinson v. Viacom Int'l, Inc.*,
   1995 WL 4170768 (S.D.N.Y. July 13, 1995) .........................................................................3

*Tufenkian Imp./Exp. Ventures, Inc. v. Einstein Moomjy, Inc.*,
    338 F.3d 127 (2d Cir. 2003)..............................................................................................4

*Williams v. Crichton*,
    84 F.3d 581 (2d Cir. 1996)................................................................................................1

iii

The Abbott Defendants[1] respectfully submit this Reply Memorandum of Law in further support of their Motion to Dismiss Plaintiff's Second Amended Complaint.

## PRELIMINARY STATEMENT

In the opening brief, Defendants meticulously compared the protectible elements of *This School Year* and *Abbott Elementary*, and established these elements are not even remotely similar, let alone "substantially similar."  Rather, the only thing these two works have in common is the unprotectible idea of a mockumentary-style sitcom set in a public city school with a protagonist that is a second-grade teacher.  But "[m]ere commonality in subject-matter cannot establish infringement."  *Allen v. Scholastic, Inc.*, 739 F. Supp. 2d 642, 664 (S.D.N.Y. 2011).  That is particularly true when the total concept and feel of these works, from the actual expression in the characters, to the actual plot of the shows, are nothing alike.  As the Motion makes clear, the uplifting storylines in *Abbott Elementary*, where a group of teachers bend over backwards to support their students, are not similar to Plaintiff's story about "lazy" teachers vying for tenure, screaming, banging books against their heads, and waiting for days off.

In response, Plaintiff tries to focus away from the correct "discerning observer test" this Court must apply, arguing instead that the works share the same "arrangement" of broad unprotectible elements, and then failing to realistically grapple with the huge disparity between the two works.  Indeed, Plaintiff barely cites a single page of her own script, relying instead on her lists and charts of stock elements, the type of lists the Second Circuit has specifically rejected as "inherently subjective and unreliable."  *Williams v. Crichton*, 84 F.3d 581, 590 (2d Cir. 1996).

In the end, however, Plaintiff does not dispute that this Court can determine if the works at issue are substantially similar on this motion to dismiss.  And, she does not dispute that this

---

[1] Unless defined in this reply, defined terms and abbreviations have the same meaning as in the Memorandum of Law of the Abbott Defendants to Dismiss Plaintiff's Second Amended Complaint (Dkt. No. 65; "Motion").

Court should compare the two works at issue for itself rather than focus on either parties'
summary of those works.  Plaintiff claims that the Abbott Defendants "disingenuously cherry
pick singular moments" of her work or "bend the facts" when discussing the works.
Memorandum of Law in Opposition to Defendants' Motion to Dismiss (Dkt. No. 82, or "Opp")
at 8; 9.  In fact, however, the Abbott Defendants addressed singular moments cherry-picked by
*Plaintiff* as supposed similarities to demonstrate that Plaintiff is ignoring the actual expression in
her own work to try to advance her claim.  The Court can, and should, however, dispose of the
parties' arguments by simply reviewing both works for itself.  Once the Court does so, it can
come to only one conclusion: no discerning viewer could find *Abbott Elementary* copied any
protectible expression from *This School Year*.  Plaintiff's Complaint should be dismissed.

## ARGUMENT

## THE TWO WORKS ARE NOT SUBSTANTIALLY SIMILAR

Plaintiff's Opposition underscores that she incorrectly believes she has a monopoly on
generic ideas – ideas not even original to her – rather than the unique expression in her script.
Stripped from generic stock ideas, the two works at issue are not remotely similar.

## A.  The More Discerning Observer Test Unquestionably Applies

In their Motion, the Abbott Defendants correctly noted that, when assessing the
substantial similarity between literary works that contain both protectible and non-protectible
elements, such as scènes à faire, facts, and ideas, courts in the Second Circuit must apply the
"discerning ordinary observer test" and "take care to inquire only whether 'the protectible
elements, standing alone, are substantially similar.'"  Motion at 7 (quoting *Knitwaves, Inc. v.
Lollytogs, Ltd.*, 71 F.3d 996, 1002 (2d Cir. 1995)).  The Motion explained that, when comparing
two television shows, like the two at issue here, courts should compare the works' "plot,

2

characters, total concept and feel (mood), setting, format and pace."  Motion at 10 (citing
*Robinson v. Viacom Int'l, Inc.*, 1995 WL 417076, at *8 (S.D.N.Y. July 13, 1995)).

In response, Plaintiff seems to not know exactly how she would like this Court to review
the two works at issue.  For starters, she agrees that this Court should be guided by *Knitwaves*
(Opp. at 6, 7, 8), that this Court should look at the total concept and feel of the two works (Opp.
at 7), and admits that Plaintiff cannot protect generic ideas and scènes à faire.  Opp. at 6-7.

But then Plaintiff confusingly cites over and over to the Second Circuit's opinion in
*Hamil America, Inc. v. GFI*, 193 F.3d 92 (2d Cir. 1999), which has no bearing here.  Opp. at 6, 8,
10.  That case compares fabric designs where "there is no contention that either party imported
unprotectible material from the public domain into its floral fabric design."  *Hamil*, 193 F.3d at
102.  For that reason, the Court did not "apply the 'more discerning' ordinary observer standard."
*Id.*  But this case involves literary works, both of which indisputably include a significant
amount of "unprotectible material" – like the idea of a mockumentary-style sitcom, or the
centuries-old idea of depicting a school in literary work.  Thus, *Hamil* is inapplicable.

Instead, as this Court itself held just two months ago, when "works include a combination
of protectable and unprotectable elements," there is no doubt that the court must apply the "more
discerning" observer test.  *A&E Television Networks, LLC v. Big Fish Entm't, LLC*, 22 Civ. 7411
(KPF), 2023 WL 4053871, at *7 (S.D.N.Y. June 16, 2023).

It is true, as this Court points out in *A&E Television*, that being careful not to find
similarity based on unprotectible elements does not mean that a court is "required to dissect [the
works] into their separate components, and compare only those elements which are in themselves
copyrightable."  *Id.* (alteration original).  Indeed, as Plaintiff correctly points out, even if her
script is composed of unprotectible elements, the selection and arrangement of these elements is

protectible. But, as detailed below, *Abbott Elementary* is not remotely similar to Plaintiff's selection and arrangement of non-protectible elements. Indeed, after reviewing the works at issue, it is hard to find a single protectible element these works have in common.

**B.     The Protectible Expression is Not Similar**

Applying the appropriate test here, and "consider[ing] whether the alleged similarities implicate . . . protected expressions, or whether they are limited to expressions and combinations of elements that are 'free for the taking[,]'" *A&E Television*, 2023 WL 4053871, at *8 (citation omitted), it is clear that the works here are not substantially similar as a matter of law.

First, Plaintiff asks this Court to look at the selection, coordination and arrangement of various (unspecified) non-protectible ideas. Opp. At 7. But the protection for a "particular selection or arrangement" of elements protects only an *original* arrangement, and, even there, the protection is "thin," because a "subsequent [author] remains free to use [underlying non-protectible elements] to aid in preparing a competing work, so long as the competing work does not feature the same selection and arrangement." *Tufenkian Imp./Exp. Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 136 (2d Cir. 2003) (citation omitted, first alteration original). This type of copyright claim is "unusual," *id.*, and this Court only found the possibility for an infringement where the two works at issue were "nearly identical" – sharing the same television hosts "sitting around virtually identical tables with virtually identical mugs," sharing the same time slots on TV, and the same pace, "lighting, guests, camera angles," and more. *A&E Television*, 2023 WL 4053871, at *9-10. The two shows here, however, are far from identical.

For starters, Plaintiff has not explained what elements the works share and how, specifically, they were arranged similarly. Rather, her brief just notes that it is theoretically possible to have a "selection and arrangement" claim and leaves it at that. But, even if she had

filled this argument out, Plaintiff could not bring a selection or arrangement claim here. The works do not proceed in the same chronology, and both consist entirely of scenes not found in the other. The total concept and feel of the works are not substantially similar for many of the reasons discussed in Defendants' Motion – reasons Plaintiff just ignores in her response. One work features a "posse" of teachers forming a tight-knit community and working together to solve problems (*Abbott Elementary*); the other features a "posse" of teachers behaving like crabs in a barrel seeking personal gain. The pilot of Plaintiff's show is structured as a single (miserable) day in Ms. Davis's life before the school year begins; while the *Abbott Elementary* pilot spans several school days at the start of the school term. Plaintiff's work centers on the protagonist's quest to obtain tenure; *Abbott Elementary* centers on the protagonist's quest to better her students' lives.

Plaintiff's argument as to the claimed commonalities of the works is similar to the argument rejected by the court in *Dreamtitle Publishing, LLC v. Penguin Random House LLC*, No. 1:22-cv-7500-GHW, 2023 WL 4350734, at *2-3 (S.D.N.Y. July 5, 2023). The court dismissed a copyright claim brought by a children's book author against a publisher of a competing children's book where each book had "I am" in the title and where both works "share a common theme—empowering Black boys." The court found that this common theme "is not an idea that [plaintiff] can monopolize through Plaintiff's copyright." *Id.* at *14. Although both books featured stories of young Black boys rapping, wearing a cape, using scientific instruments, playing basketball, and engaging in aspirational activities with the goal of promoting self-esteem, the court found that the total concept and feel of the books were "clearly distinct." *Id.* at *14.

The court noted that "[t]he idea of a child conducting a science experiment or thinking about space," "the depiction of children playing basketball," and "depictions of people rapping"

5

are unprotectible ideas, or "scènes à faire," as activities "boys like to engage in."  *Id.* at *19-20.
And the actual expression of these ideas was completely different.  For example, the image of a
boy in a cape flying was an idea.  But in one work, the child was actually flying (a pure fantasy),
and in the other, the child was jumping, not flying – much more grounded in reality.  While both
kids were wearing capes, "they are distinct in color and form" (*id.* at *18-19), and their positions
were different.  All in all, the actual expression of this idea was different.  And while both books
had "selected" a number of the same ideas, that alone did not create a copyright claim.

  Here, too, Plaintiff can point to a smattering of similar broad themes in the works – but
that is not copyright infringement.  The works are so different, it is hard to know where to begin.
Even focusing on the four components Plaintiff highlights in her brief – the works' (1) plot, (2)
characters, (3) setting, and (4) format and pace – reveals that Plaintiff is asking this Court to
protect the most abstract of ideas, rather than the ways those ideas are expressed.

  *Plot:*  Starting with the plot, Plaintiff claims that both works are "a mockumentary style
sitcom about a youngish, somewhat naïve, female, teacher of color, embarking on her second
year of teaching in an inner-city school populated by distinctly colorful characters."  But this
"plot" is so broad and generalized that it disregards the heart of both works, and ultimately seeks
protection for unprotectible ideas.  Under this reasoning, *Friends* and *Seinfeld* would be deemed
substantially similar because they are both traditional sitcoms about a friend group comprised of
white young adults, some of whom are Jewish, who are living in New York City – and all of
whom are "distinctly colorful."  Indeed, both sitcoms are set in New York City, mostly at a
coffee shop or an apartment where another main character lives across the hall, there is a
mooching neighbor who is a ladies' man (Joey from *Friends* and Kramer from *Seinfeld*), and
there are a number of similar sub-plots about romance, couches, hand modeling (or hand twins)

or the like.  But copyright laws would not deem *Friends* to be an infringement simply because *Seinfeld* came first.  Similarly here, the "plot" of *Abbott Elementary* is only similar to *This School Year* at the most abstract level.  But as the Motion sets out in detail from pages 10 to 14, which Plaintiff ignores, the expression of this broad idea is wholly dissimilar in the two works.

     ***Characters:***  Plaintiff ignores that "generic and generalized character traits such as race, gender, and hair color are not protectible."  *Abdin v. CBS Broad., Inc.*, 971 F.3d 57, 67 (2d Cir. 2020); *see also Nichols v. Universal Pictures Corp.*, 45 F.2d 119, 121 (2d Cir. 1930) ("[T]he less developed the characters, the less they can be copyrighted; that is the penalty an author must bear for marking them too indistinctly.").  Similarities between characters that are "mostly generalized" are unprotectible.  *Abdin v. CBS Broad. Inc.*, 971 F.3d 57, 72 (2d Cir. 2002) (citing *Alexander v. Murdoch*, No. 10-cv5613 (PAC), 2011 WL 2802923, at *5 (S.D.N.Y. July 14, 2011) (dismissing claim where both characters shared the same sex and hair color, as well as similar mannerisms), *aff'd*, 502 F. App'x 107 (2d Cir. 2012), and *Cabell v. Sony Pictures Entm't, Inc.*, 714 F. Supp. 2d 452, 454 (S.D.N.Y. 2010) (granting summary judgment where characters were both military-trained hairstylists who fight crime with hairdryers as weapons), *aff'd*, 425 F. App'x 42 (2d Cir. 2011)).  But generic traits are all the characters have in common here.  To argue otherwise, Plaintiff skips over her own expression of the characters in the script.  For example, Plaintiff takes issue with Defendants' characterization of Ms. Davis as "bothered" and "unenthused" in contrast with Ms. Teagues' overall sunny disposition, arguing the script notes state that Ms. Davis was only "unenthused at the moment."  Ms. Davis is obviously unenthused about her job from cover to cover, slamming a book against her face on page 1 (SAC Ex. J, p.1), kicking her colleagues under the table when her selfishness is about to be exposed (SAC Ex. J, p.18), and screaming at the top of her lungs and throwing objects in her classroom (SAC Ex. J, p.

28).  Hardly being "interchangeable" as Plaintiff would have it (Opp. at 13), the core expression of the protagonists is so clearly distinct.

Plaintiff even includes a chart of the allegedly similar characters, which only underscores how she seeks to protect stock characters with far less in common than characters this Court has found to be legally dissimilar.  *See, e.g.*, *DiTocco v. Riordan*, 496 F. App'x 126, 128 (2d Cir. 2012) ("[b]oth sets of books chronicle the adventures of a young male protagonist named after the Greek hero Perseus" set in modern times); *Hogan v. DC Comics*, 48 F. Supp. 2d 298, 311-12 (S.D.N.Y. 1999) (main characters in both works were named Nicholas Gaunt and were born half-vampire because their mothers were bitten by vampires during their respective pregnancies).  A main character in *This School Year* that is a Black teacher who refuses to use "white paper" is hardly like a student that appears for literally seconds in *Abbott Elementary* refusing to stand for the national anthem.  In Plaintiff's chart, these characters are "interchangeable" because they are both apparently "Black Nationalists."  The law does not allow her to protect such a broad theme. A Black female principal in a predominantly Black school who ends up joyfully leading the step team is not similar to a white female principal who does not even know what a step team is.  As in *Dreamtitle*, "Plaintiff's argument that these [characters] are 'virtually identical' is explicable only by Plaintiff's decision to strip them down to their 'most basic elements[.]' . . . But those 'most basic elements' to which Plaintiff reduces the [characters] are not protectible."  2023 WL 4350734, at *21.  *See also* Motion at 16-17 (discussion of characters).[2]

**Setting:**  Plaintiff again reiterates that both works take place in inner-city schools, but it is

---

[2] Plaintiff alleges the works are similar because the love interest in her work is called Mr. Wright, and the Abbott Defendants considered – and rejected – using the name Wright for a character.  This argument fails because Plaintiff seeks to establish similarity in "the intention behind the creation of the works, rather than the tangible manifestation of that intention[,]" *Dreamtitle Publ'g*, 2023 WL 4350734, at *15.  Moreover, a character named Mr. Wright is hardly plaintiff's invention—rather, it is a homophone for "right" used as a literary device in countless works.

exactly this commonality that undercuts many of Plaintiff's alleged similarities.  Stories based on a similar premise – like a teacher working in an underfunded urban school – necessarily will involve similar plot points and characters, such as facing challenges as a result of scarce resources, inept supervisors, and more advanced teachers offering mentorship to inexperienced young colleagues.  But apart from these generalized themes, the settings are actually quite different.  In *Abbott Elementary*, the teachers work in an optimistic and communal setting where everyone is looking out for the best interests of the children.  In *This School Year*, the setting is dark and competitive – where each character is looking to promote their own self-interests.

**Format and Pace:**  Plaintiff seeks to own the idea of a "half-hour situational comedy with short scenes, witty banter, and most tellingly, a single-camera, cinema verité look and feel which conveys multiple points of view and the energy of the environment."  But that describes *The Office*, *Modern Family*, and *Parks and Recreation*, which existed before Plaintiff's work.

All in all, this case is much like the copyright claim advanced, and rejected, by the plaintiff in *Mena v. Fox Entertainment Group, Inc.*, No. 11 Civ. 5501 BSJ RLE, 2012 WL 4741389 (S.D.N.Y. Sept. 29, 2012).  There, the plaintiff's work, *Transience*, and the defendants' show, *Past Life*, are both "investigatory procedurals with the distinctive twist that crimes are solved using clues extracted from past life flashbacks.  The plots of both works rely on the process of inducing and interpreting 'regressions,' identifying 'triggers,' and deciphering disjointed clues.  Both works are also concerned primarily with deducing what trauma befell a reincarnated individual in a prior life in order to resolve a contemporary problem."  *Mena*, 2012 WL 4741389, at *7.  Despite "obvious parallels between the plots . . . [t]he commonalities . . . are insufficient to support a finding of substantial similarity."  *Id.* at *8.  Both works had "a tough, capable, determined detective who follows clues and facts[,] ha[d] lost his wife, [was]

practical, and display[ed] skepticism with regard to reincarnation," as well as "reincarnated murder victims who provide[d] the clues to solve the murders," psychiatrists who interact[ed] with the reincarnated victims, and the detective characters.  *Id.* at *11-12.  Yet, as here, the expression of any general commonality in the works was different.  Digging down to the actual expression in the works, the court noted that, "[b]oth *Transience* and *Past Life* contain subplots and twists not found in the other.  Arguably similar scenes occur at different times, important clues are cracked by different people and at different stages in the investigation, and analogous characters are developed to different degrees."  *Id.* at *15.

That is all the more true here.  Sure, both works here are about inner-city schools, both have teachers, principals, love interests, and students.  Both are comedies.  Both share some basic themes that would naturally flow from an inner-city school – a step team, lack of funding, and naive teachers.  These strings of generalizations do not make a copyright claim.  The essence of the works is so very different.  Moreover, there is no credible argument that Plaintiff selected and arranged non-protectible elements in a way that is protectible, and that is substantially similar to anything in *Abbott Elementary*.  Plaintiff rejects the idea of her comedy being called dark, but she cannot avoid her own script, filled with teachers competing for tenure, frustrated, screaming, banging, and waiting for days off.  And she cannot ignore the joy that is *Abbott Elementary*, where each character finds joy in their job, joy working with children, joy in their relationships with each other.  No discerning observer would ever conclude that the optimistic and uplifting *Abbott Elementary* misappropriated protected elements from the satirical and often jaded view of *This School Year.*

## CONCLUSION

For all these reasons, Defendants respectfully request that the Court grant their motion to

10

dismiss the Complaint with prejudice as against the Abbott Defendants, and award the Abbott

Defendants their attorneys' fees.

Dated:  New York, New York
        August 9, 2023

                                        Respectfully submitted,

                                        DAVIS WRIGHT TREMAINE LLP

                                        By: /s/ Rachel F. Strom
                                            Rachel F. Strom
                                            Celyra I. Myers

                                        1251 Avenue of the Americas, 21st Floor
                                        New York, NY  10020-1104
                                        (212) 489-8230 Phone
                                        (212) 489-8340 Fax
                                        rachelstrom@dwt.com

                                        *Attorneys for Defendants American Broadcasting
                                        Companies, Inc., Delicious Non-Sequitur, Justin
                                        Halpern, Patrick Schumacker, and Quinta Brunson*

11